UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| JONATHAN NIELSEN | : | NUMBER: 3:09-cv-01757 |
|---|---|---|
| VERSUS | : | JUDGE JAMES |
| GRAPHIC PACKAGING INTERNATIONAL | : | MAGISTRATE JUDGE HORNSBY |

## STATEMENT OF UNDISPUTED FACTS

NOW INTO COURT through undersigned counsel comes defendant, GRAPHIC PACKAGING INTERNATIONAL, INC. (hereafter, GPI) and submits the following Statement of Undisputed Facts:

1.

Brad Howard is the branch manager for Konecranes' Monroe office (Depo. Brad Howard, P. 6, L. 11) and a true and correct copy of his deposition is attached hereto as Exhibit A.

2.

In May of 2006 Konecranes had nine to ten service technicians that were directly employed by Konecranes and had three crane service technicians whose payroll was handled by Clayton all of whom were performing work on cranes at Konecranes' direction. (Depo. Brad Howard, P. 10, L. 4-12 and P. 11, L. 1-5)

3.

Konecranes set Mr. Nielsen's hourly rate. (Depo. Brad Howard, P. 12, L. 13)

4.

Clayton does not have any role in setting the hourly rate for those workers hired by Konecranes and paid by Clayton. (Depo. Brad Howard, P. 19, L. 1-4)

5.

After Clayton pays a Konecranes worker it will send Konecranes a bill for that payment plus 25%. (Depo. Brad Howard, P. 19, L. 13-15) This has been the arrangement between Konecranes and Clayton ever since Mr. Howard became the Branch Manager for Konecranes. (Depo. Brad Howard, P. 19, L. 16-19)

6.

As the branch manager Mr. Howard decides who to hire to work as a crane service technician in his Monroe office (Depo. Brad Howard, P. 22, L. 7-9) and a decision is then made by Konecranes as to whether or not the worker would be a Konecranes payrolled employee or if the worker would be payrolled through Clayton. (Depo. Brad Howard, P. 23, L. 8-13)

7.

Mr. Howard does not care if the individuals he hires are paid directly by Konecranes, Inc. or Clayton. (Depo. Brad Howard, P. 24, L. 13-16)

8.

Other than the fact that some crane service technicians are paid directly by Clayton they are all supervised, monitored and controlled in the same way. (Depo. Brad Howard, P. 24, L. 17 – P. 25, L. 1)

9.

While it is true that Konecranes did not enter into any agreement with Clayton whereby Clayton performed any part of the work which was contracted between Konecranes and Graphic on the day of Mr. Nielsen's accident, Mr. Nielsen was performing part of that work that was contracted between Konecranes and Graphic on the date of Mr. Nielsen's accident. (Depo. Brad Howard, P. 29, L. 10 – P. 30, L. 12)

10.

Mr. Howard does not consider Clayton to be a "labor pool provider" because there is no recruitment of labor pool provider workers by Konecranes and Konecranes does not directly negotiate a wage with the labor pool workers. (Depo. Brad Howard, P. 30, L. 23) Whereas with those workers whose payroll is routed through Clayton the worker is recruited by Konecranes and the hourly wage is negotiated directly between Konecranes and the worker. (Depo. Brad Howard, P. 31, L. 12 – P. 32, L. 6)

11.

When Mr. Howard elected to give Mr. Nielsen a one dollar per hour raise he did not consult with Clayton to get its approval as the decision and what to pay Mr. Nielsen is

a purely unilateral decision on Konecranes' part and Clayton has no say so in it. (Depo. Brad Howard, P. 43, L. 12 – P. 44, L. 11)

12.

All job candidates, including those whose payroll is routed through Clayton, fill out a Konecranes' employment application and go through the Konecranes' interview process and if Konecranes decides to hire the individual a decision is then made by Konecranes as to whether the individual will be paid through Konecranes' direct payroll or if the individual is going to be paid through Clayton's payroll and if it is decided that he will be on Clayton's payroll a Clayton application, which Konecranes keeps in its Monroe office, is then filled out and delivered to Clayton and Clayton has never rejected one of Konecranes' employees. (Depo. Brad Howard, P. 44, L. 24 – P. 46, L. 6)

13.

Konecranes conducts a drug screen on potential applicants but does not provide the results of the drug screen to Clayton. (Depo. Brad Howard, P. 47, L. 9-12)

14.

The agreement between Clayton and Konecranes is that Clayton handles the payroll and cutting the paycheck and in turn Konecranes then pays Clayton 25% more of what Clayton paid to the employee. (Depo. Brad Howard, P. 47, L. 20 - P. 48, L. 2) Mr. Howard has entered into this agreement with Clayton on numerous times as a manager for Konecranes. (Depo. Brad Howard, P. 48, L. 2-5)

15.

Other than the obligation of Konecranes to pay 125% of what Clayton pays the employees and the reciprocal obligation of Clayton to take care of the payroll, which includes making appropriate tax withholdings and related items, there are no other agreements between Clayton and Konecranes. (Depo. Brad Howard, P. 48, L. 6–13)

17.

At the time of Mr. Nielsen's accident Konecranes employed twelve service technicians employed directly by Konecranes and two service technicians of which Mr. Nielsen was one, employed directly by Clayton. (Depo. Brad Howard, P. 49, L. 13-23)

18.

Konecranes provided Mr. Nielsen with a uniform just like Konecranes' direct employees. (Depo. Brad Howard, P. 15, L. 2-18)

19.

Konecranes provided all specialty tools and Clayton never provided any tools. (Depo. Brad Howard, P. 51, L. 16-23)

20.

Konecranes' relationship with Clayton is not like a relationship with a "labor provider" because Konecranes, not Clayton, recruits the employees and Konecranes "decides whether to bring on that employee" as opposed to Clayton sending the worker to Konecranes. (Depo. Brad Howard, P. 57, L. 21 – P. 58, L. 5)

21.

Clayton does not even make the decision to hire someone like Mr. Nielsen who is simply delivered to Clayton by Konecranes in accordance with the agreement between Clayton and Konecranes. (Depo. Brad Howard, P. 58, L. 12-16)

24.

Mr. Nielsen was performing part of the contract that Konecranes had with Graphic to change out the load brake on the 50 ton dry end crane and for those hours that Mr. Nielsen spent changing out the load brake, that Konecranes was contractually obligated to perform for Graphic, Konecranes paid Clayton 125% of $17.00 per hour. (Depo. Brad Howard, P. 61, L. 21 – P. 62, L. 12)

Respectfully submitted,

MAYER, SMITH & ROBERTS, L.L.P.
Attorneys for Graphic Packaging International, Inc.

By:  *s/Caldwell Roberts, Jr.*
      Caldwell Roberts, Jr., Bar No. 20343
      1550 Creswell
      Shreveport, Louisiana 71101
      Telephone: (318) 222-2135
      Fax: (318) 222-6420

## **CERTIFICATE**

I HEREBY CERTIFY that on April 29, 2011 a copy of the Statement of Undisputed Facts was electronically filed with the Clerk of Court by using the CM/ECF system which will send a notice to electronic filing to all counsel of record.



s/Caldwell Roberts, Jr.
OF COUNSEL