UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **JONATHAN NIELSEN** | **CIVIL ACTION NO. 09-1757** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **GRAPHIC PACKAGING INTERNATIONAL, INC.** | **MAG. JUDGE MARK HORNSBY** |

## RULING

Pending before the Court are a Motion for Partial Summary Judgment [Doc. No. 51] filed by Plaintiff Jonathan Nielsen ("Nielsen") and a Motion for Summary Judgment [Doc. No. 62] filed by Defendant Graphic Packaging International, Inc. ("GPI"). For the following reasons, GPI's Motion for Summary Judgment is GRANTED, and Nielsen's Motion for Partial Summary Judgment is DENIED. The Court also gives notice of its intent to *sua sponte* grant Nielsen and GPI summary judgment against Intervenor Plaintiff Louisiana Workers' Compensation Corporation ("LWCC").

### I.  BACKGROUND

This case arises out of an alleged injury to Nielsen while he was working at GPI's facility in Monroe, Louisiana.

In 2003 or 2004, Nielsen sought employment with Konecranes, Inc. ("Konecranes"), after he was encouraged to do so by Konecranes employees he knew. Although Konecranes wanted Nielsen's services as a maintenance technician, it did not hire Nielsen as a full-time employee payrolled by Konecranes. Instead, Konecranes routed Nielsen's hire through Clayton Administrative, Inc. ("CAI"), an administrative services corporation that Konecranes used to payroll a portion of its workforce.

Konecranes and CAI operated under an oral arrangement where CAI paid some of Konecranes' workers, and, in return, Konecranes paid CAI 125% of those workers' pay. CAI issued paychecks to these workers, paid their workers' compensation insurance premiums, and matched their social security and medicare payments.

However, Konecranes unilaterally made the decision to hire the workers, set the workers' hourly wages, approved the workers' timesheets, determined whether to give the workers raises, conducted performance reviews, performed all supervision, and controlled the workers' hours and job assignments. Konecranes also held effective termination rights over the workers. If Konecranes no longer wanted a worker payrolled by CAI, it could stop giving the worker assignments without prior consultation with CAI, and CAI would stop paying the worker. Although Konecranes' workers—those payrolled by Konecranes and those payrolled by CAI—typically used their own tools, if a special tool was needed, it was provided by Konecranes.

CAI was not involved in any substantive aspect of Konecranes' business, and it was not involved in any substantive aspect of Nielsen's work for Konecranes. The only function served by CAI was an administrative payroll function.

GPI is a paper manufacturer. On September 17, 2008, GPI and Konecranes entered into a written contract. [Doc. No. 24-3]. GPI agreed to pay Konecranes $6000 in exchange for Konecranes' agreement to make certain adjustments and repairs to a crane owned by GPI. Section thirteen of the contract stated:

> If services are to be performed at [GPI's] facilities in . . . Louisiana, it is agreed that pursuant to the provisions of Louisiana Revised Statutes 23:1061(A)(3), that it is the intent and agreement of the parties hereto that the relationship of [GPI] to the direct employees and the statutory employees of [Konecranes] be that of a statutory employer.

This section of the contract provided GPI with tort immunity under certain circumstances. Under Louisiana law, statutory employers are responsible for workers' compensation payments and, thus, are immune from tort lawsuits brought by their statutory employees. *See* LA. REV. STAT. §§ 23:1061, 23:1032. Pursuant to its contract with Konecranes and Louisiana Revised Statute § 23:1061(A)(3), GPI was the statutory employer of Konecranes' direct and statutory employees.

On September 23, 2008, Nielsen was allegedly injured while changing out a mechanical load brake at GPI's facility.

On September 18, 2009, Nielsen filed suit against GPI in the Fourth Judicial District Court, Ouachita Parish, Louisiana.

On October 7, 2009, GPI removed the case to this Court based on diversity jurisdiction.

On December 9, 2009, LWCC filed a Complaint of Intervention. [Doc. No. 9].

On November 29, 2010, the Court issued a Ruling denying GPI's first Motion for Summary Judgment and granting Nielsen's first Motion for Partial Summary Judgment. [Doc. No. 41]. The Court found that no oral contract existed between Konecranes and CAI and, thus, Konecranes was not Nielsen's statutory employer under the two-contract theory. The parties did not raise the issue of whether Nielsen was directly employed by Konecranes.[1] As GPI was only the statutory employer of Konecranes' direct or statutory employees, the Court also determined that GPI did not have tort

---

[1] In its original Ruling, the Court stated, in conclusory fashion, that "Konecranes is not Nielsen's immediate . . . employer." [Doc. No. 41, p. 8]. Similarly, the Court deemed CAI "Nielsen's immediate employer" in its Memorandum Order addressing GPI's Motion for Reconsideration. [Doc. No. 47, p. 1]. The parties did not raise this issue as a matter of dispute, explicitly or implicitly, in their filings with the Court at that time. However, in its second Motion for Summary Judgment [Doc. No. 62], GPI contends that Konecranes was Nielsen's employer by operation of law. Thus, to the extent that the Court's dicta in prior rulings are inconsistent with its analysis and conclusion in this Ruling, the Court sets aside its previous dicta.

immunity from Nielsen's claims.

On December 1, 2010, GPI filed a Motion for Reconsideration [Doc. No. 43], which the Court granted in part and denied in part. [Doc. No. 47]. The Court determined that it erred "when it found that there was no genuine issue of material fact that an oral contract did not exist between Konecranes and CAI." *Id.*, p. 3. Thus, the Court found that it could not grant summary judgment regarding GPI's tort immunity because it was not clear whether Konecranes was Nielsen's statutory employer under the two-contract theory.

On February 9, 2011, Nielsen filed a second Motion for Partial Summary Judgment [Doc. No. 51] and later filed a supplemental memorandum in support of this motion. [Doc. No. 61]. GPI filed a Response and Nielsen filed a Reply. [Doc. Nos. 64 & 66].

On April 29, 2011, GPI filed its second Motion for Summary Judgment. [Doc. No. 62]. Nielsen filed a Response and GPI filed a Reply. [Doc. Nos. 67 & 68]. Nielsen filed a Sur-reply [Doc. No. 71].

## II. ANALYSIS

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] FED. R. CIV. P. 56(a). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight

---

[2] Although the Court previously entered a final judgment granting Nielsen's first motion for partial summary judgment [Doc. No. 42], the Court later vacated this judgment and denied Nielsen's motion. [Doc. No. 47]. Denials of summary judgment are "interlocutory order[s], which the court may reconsider and reverse any time before entering final judgment." *Millar v. Houghton*, 115 F.3d 348, 350 (5th Cir. 1997).

the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

**B.     Tort Immunity**

In this case, GPI, pursuant to its contract with Konecranes and Louisiana Revised Statute § 23:1061(A)(3), is immune from Nielsen's tort claims if Konecranes was either Nielsen's direct or statutory employer.

In its second Motion for Summary Judgment, GPI sets forth three bases for finding that it is immune from Nielsen's claims. First, GPI argues that, in light of new summary judgment evidence, there was an oral contract between Konecranes and CAI, and it is therefore immune because Konecranes was Nielsen's statutory employer under the two-contract theory.

Second, GPI argues that it is immune under the borrowed servant doctrine.

Third, GPI argues that it is immune because Nielsen was an employee of Konecranes by

operation of law. In essence, GPI argues that even if Nielsen was not Konecranes' statutory employee, he was Konecranes' direct employee as a matter of law.

In his second Motion for Partial Summary Judgment, Nielsen implicitly argues that GPI has no tort immunity under the Louisiana Workers' Compensation Act ("LWCA"). Nielsen contends that, in light of new summary judgment evidence, no oral contract existed between Konecranes and CAI and, thus, Konecranes was not Nielsen's statutory employer under the two-contract theory.

### 1. Direct Employee

Pursuant to GPI's contract with Konecranes and Louisiana Revised Statute § 23:1061(A)(3), GPI is the statutory employer of Konecranes' direct employees and its statutory employees. The Court will first address whether Nielsen was a direct employee of Konecranes.

"The right to control is the essence of the employer/employee relationship, evidenced by the following four primary factors: (1) selection and engagement, (2) payment of wages, (3) power of dismissal, and (4) power of control. None of these factors alone is determinative, but the totality of the circumstances must be considered." *Felan v. F&F Trucking, Inc.*, No. 97-983 (La. App. 3 Cir. 2/4/98); 708 So.2d 430, 434 (using the right-of-control factors to determine which employer directly employed the plaintiff).

It is undisputed that Nielsen was selected and engaged by Konecranes and that Nielsen rendered services for Konecranes, not CAI.[3] Although CAI may have technically been able to dismiss Nielsen, the record establishes that CAI only acted at the behest of Konecranes and that

---

[3] Under the LWCA, "[a] person rendering service for another . . . is presumed to be an employee." LA. REV. STAT. § 23:1044. Although this presumption is typically used in the independent contractor context, it is yet another indication that Nielsen was employed by Konecranes, not CAI.

Konecranes actually held the power of dismissal. Konecranes also clearly exercised the power of control over Nielsen. Konecranes dictated the location, type, and length of his assignments. Konecranes set his pay, approved his timesheets, reviewed his performance, determined whether to give him a raise, and provided him with special tools as needed. CAI exercised no control over the terms of Nielsen's employment. CAI merely paid Nielsen's wages and other associated employment costs and was, in return, reimbursed and paid a fee by Konecranes. The totality of the circumstances clearly indicates that Konecranes was Nielsen's true employer.

Nielsen argues, however, that he was not a Konecranes employee because (1) he was paid by CAI and his official paperwork was processed through CAI, (2) Konecranes treated him differently than employees it paid directly, and (3) Konecranes did not intend for Nielsen to be its employee. As to the first argument, CAI's status as the issuer of Nielsen's paycheck does not overrule the right-to-control factors. *See Book v. Police Jury of Concordia Parish*, 59 So.2d 151, 155-56 (La. App. 2 Cir. 1952) (using the right-to-control factors to conclude that the plaintiff was employed by the Louisiana State Board of Health rather than the Concordia Parish Police Jury, which directly paid the plaintiff his wages). As to the second argument, the fact that Konecranes may have treated Nielsen differently than it treated workers it paid directly is not a relevant consideration under the right-to-control test. In general, employers may treat their employees differently if they wish, as there is no requirement that all employees be given the same benefits packages, pay, or hours. As to the third argument, whether Konecranes is Nielsen's employer is determined by the right-to-control test, not its intent regarding his legal employment status.

Finally, the Court is mindful of the intent and broader purpose of the LWCA. As explained by the Louisiana Supreme Court,

> [W]orkers' compensation laws were enacted to provide social insurance to compensate victims of industrial accidents because it was widely believed that the limited rights of recovery available under the general tort law [were] inadequate to protect them. . . . [T]he purpose behind the statutory employer doctrine was to prevent principals from evading their compensation responsibilities by interposing a straw man between them and those employees who are doing the whole or part o[f] their trade. A worker should be protected as to the compensation obligation owed to him, and the principal should not be allowed to insulate itself through a contracting scheme. . . . [T]he employer is forced to fulfill the compensation obligation owed to his employee and cannot use an elaborate contractual scheme to evade this responsibility.

*Allen v. State ex rel. Ernest N. Morial–New Orleans Exhibition Hall*, 02-1072, p. 14 (La. 4/9/03); 842 So.2d 373, 382 (internal citations and quotation marks omitted).

Although the statutory employment doctrine closed the loophole of a principal subcontracting its work to evade compensation responsibilities under the LWCA, the case presently before the Court illustrates another method by which employers might attempt to skirt their LWCA responsibilities—by hiring employees through an administrative payroll company. In fact, Konecranes interposes a flimsier straw man than the one deemed insufficient by the statutory employment doctrine. Rather than subcontracting its work to a substantive enterprise, Konecranes routes a portion of its workforce through an administrative payroll service, thereby attempting to avoid its status as the employer of these workers. It does not conform with the design of the LWCA to exclude Konecranes as Nielsen's employer based on such a transparent contracting scheme.

For the reasons stated above, the Court finds that Nielsen was a direct employee of Konecranes. As GPI is the statutory employer of Konecranes' direct employees, GPI is immune from Nielsen's tort claims. Therefore, GPI's Motion for Summary Judgment [Doc. No. 62] is GRANTED.

### 2. Other Arguments

As the Court has ruled that GPI is immune from Nielsen's tort claims because Nielsen was a direct employee of Konecranes, the Court need not reach the other arguments advanced by the parties on this issue.

### C. Intervenor Plaintiff

Finally, the Court gives notice of its intent to *sua sponte* grant Nielsen and GPI summary judgment against Intervenor Plaintiff LWCC. LWCC intervened in this case to be indemnified or reimbursed "out of any damages or recovery by way of judgment or settlement in favor of Plaintiff." [Doc. No. 9]. Alternatively, in the event the Court found that Nielsen was not entitled to workers' compensation benefits or that any recovery by LWCC was "not warranted because of coverage or contractual exclusion," *id.*, LWCC sought recovery from Nielsen.

Thus, LWCC's claims in this case were contingent upon Nielsen's ability to recover in tort, the Court's determination that Nielsen was not entitled to workers' compensation benefits, or the Court's determination that LWCC did not merit recovery because of coverage or contractual exclusion. *See id.* Since the Court determined that GPI is immune from Nielsen's tort claims and did not determine that Nielsen was not entitled to workers' compensation benefits or that LWCC did not merit recovery due to coverage or contractual exclusion, LWCC has no right of recovery. If LWCC opposes the Court's intended disposition of its requests for relief, it shall file a memorandum in opposition within fourteen (14) calendar days of the date of this Ruling and Judgment. *See Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 641 (5th Cir. 2007).

## III. CONCLUSION

For the foregoing reasons, GPI's Motion for Summary Judgment [Doc. No. 62] is

GRANTED, and Nielsen's claims in this case are DISMISSED WITH PREJUDICE. Nielsen's Motion for Partial Summary Judgment [Doc. No. 51] is DENIED. The Court also gives notice of its intent to *sua sponte* grant Nielsen and GPI summary judgment against Intervenor Plaintiff LWCC.

MONROE, LOUISIANA, this 17th day of June, 2011.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE